**E-FILED**
Saturday, 24 January, 2009  01:21:22 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF ILLINOIS  – SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GREGORY HICKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3031 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

CHARLES H. EVANS, U.S. Magistrate Judge:

Plaintiff Gregory Hickman appeals from the Defendant Commissioner's final decision to deny his application for Disability Insurance Benefits and Supplemental Security Income (collectively Disability Benefits).  42 U.S.C. §§ 416(i), 423, 1382c.  The parties consented, pursuant to 28 U.S.C. § 636©, to have this matter proceed before this Court.  Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 9).  The parties have filed cross-motions for summary judgment. Motion for Summary Judgment and Memorandum (d/e 11); Motion  for Summary Affirmance (d/e 14).

This Court has jurisdiction to hear this appeal.  42 U.S.C. §§ 405(g), 1383©.   For the reasons set forth below, the Court affirms the Commissioner's decision, allows the Commissioner's Motion for Summary Affirmance, and denies Hickman's Motion for Summary Judgment and Memorandum.

STATEMENT OF FACTS

Hickman was born October 12, 1958.  Birth Certificate (d/e 12). Hickman graduated high school in May 1976.  In addition to high school, Hickman took courses in computer programing, business management, data processing, and corrections.  Answer (d/e 7), attached Certified Transcript of Proceedings before Social Security Administration ®.) at 162, 165. Hickman worked as a hotel houseman, corrections officer, security officer, care taker, maintenance worker, file clerk, and laborer.  R. 153, 169-174. Vocational Expert Bonnie Gladden classified Hickman's past relevant work as banquet attendant, fast food worker, stock clerk, janitor/maintenance worker, corrections officer, security guard, and file clerk. R. 41.

Hickman filed his application for Disability Benefits on August 14, 2006.   He alleged he was disabled since February 28, 2005, due to headaches, back pain, blurred vision, pain in his left shoulder and arm,

2

arthritis in his left hand, shortness of breath, constant fatigue, spinal scoliosis, and back spasms.  R. 152.

Hickman was in an automobile accident on March 4, 2004.  He was treated at a hospital emergency room for a neck strain and head contusions. A CT scan of the cervical spine showed mild cervical thoracic scoliosis and mild C5-6 degenerative changes and straightening of the normal cervical lordosis, but not prevertebral soft tissue swelling.  R. 270, 299.  A CT scan of Hickman's head showed no abnormalities.  R. 271, 301-02.  Hickman saw James Stegeman, M.D., for a follow-up visit on March 8, 2004. Hickman complained of paresthesia down his left shoulder and deltoid area, and some sense of weakness.  Dr. Stegeman diagnosed Hickman with whiplash/neck strain with possible pressure on a nerve.  Dr. Stegeman referred Hickman to physical therapy for evaluation and treatment.  R. 264. Hickman reported to Dr. Stegeman on March 22, 2004, and April 5, 2004, that the therapy was improving his condition.  On April 5, 2004, Dr. Stegeman released Hickman to return to work as a maintenance worker.  R. 262-63.

On September 12, 2004, Hickman went to the emergency room at St. John's Hospital in Springfield, Illinois, due to pain in his left hand.

R. 277-81.   Hickman had fallen on his hand in August 2004.   X-rays

showed a small fracture in his left hand.  His hand was put in a splint and

he was released for light duty work.  R. 281.

On October 19, 2004, Hickman went to see Dr. Stegeman

complaining of discomfort in his neck and back.  Hickman had missed four

days of work because of the pain.  Dr. Stegeman found some tightness and

tenderness in Hickman's spine, but Hickman demonstrated no limit on the

range of motion in the spine.  Dr. Stegeman released Hickman to return to

work without restrictions.  R. 261.

On February 15, 2005, Hickman was seen by a chiropractor.

Hickman reported persistent headaches, neck and back pain, and blurred

vision. The chiropractor found reduced range of motion in Hickman's back,

but normal strength generally.   The chiropractor recommended regular

treatments for the next eight weeks.  R. 254.

On  February 17, 2005, Hickman saw Dr. Stegeman for headaches

and left arm pain.  Hickman reported that he missed work for a week

due to the pain.   Dr. Stegeman found some tenderness in the back and

shoulder muscles and some discomfort in the movement of the left shoulder.

Otherwise, Hickman had full range of motion and good arm strength.

Hickman reported that he was visiting a chiropractor. Dr. Stegeman kept Hickman off work at this time. Dr. Stegeman recommended physical therapy, but Hickman preferred working with the chiropractor. R. 260.

On May 19, 2005, Hickman returned to see Dr. Stegeman. Hickman did not complete the course of treatment with the chiropractor because he ran out of money. Dr. Stegeman found no tenderness or tightness in Hickman's back, but neck motion caused discomfort in the left arm. Dr. Stegeman also found that Hickman's hand grasp was weaker on the left. Dr. Stegeman released Hickman to return to work with the following restrictions: no lifting greater than 15 pounds, no climbing, no repetitive motions with back or arms, and no pulling. R. 259.

On September 13, 2006, Hickman was seen at the Capitol Community Health Center in Springfield, Illinois, complaining of headaches; pressure in the neck, arms, and shoulders; and trouble swallowing. He was given Neurontin for the pain. R. 326-30.

On October 25, 2006, Vittal V. Chapa, M.D., performed a consultative examination of Hickman. Dr. Chapa stated that Hickman complained of headaches and neck pain, decreased left-hand grip strength, left-side body cramps, blurred vision, and bronchitis. Dr. Chapa's

examination, however, was essentially unremarkable.  R. 309-11.

On November 3, 2006, Paul Smalley, M.D., reviewed Hickman's medical records and completed a physical residual functional capacity assessment.  Dr. Smalley opined that Hickman could lift 50 pounds occasionally and 25 pounds frequently, and had no other limitations.  R. 315-22.   Agency physician Richard Bilinsky, M.D., reviewed Dr. Smalley's assessment  and  concurred with his opinions.  Dr. Bilinsky stated  that Hickman  could  perform  medium  work.  R. 341-42.

On January 3, 2007, Hickman underwent a functional disability assessment.   R. 334-39.   The evaluator opined that Hickman was functioning at the low end of the medium physical demand level, but was de-conditioned and, thus, fatigued easily.   The evaluator opined that Hickman was employable at or below the medium physical demand level. The medium physical demand level called for occasional lifting of 50 pounds and frequent lifting of 25 pounds.  R. 338.

The Administrative Law Judge (ALJ) conducted a hearing on August 13, 2007.   Hickman and Vocational Expert Bonnie Gladden testified. Hickman testified that he was unable to work due to difficulties with his hands, vision, legs, and back.   Hickman stated that his shoulders tightened

up when he attempted to bend over.  He also stated that florescent lighting caused him to have blurred vision and headaches.   R. 31-32.  Hickman stated that he could sit for half an hour, stand for ten minutes, walk for five blocks, and lift 15 pounds occasionally.  Hickman stated that he could not push or pull with his left arm.  R. 32-33.  Hickman also stated that he had very little strength in his left hand.  R. 37.

Hickman lived with his fiancé.  Hickman stated that he could take care of most of his personal hygiene, although could not cut the hair on the back of his head, and his fiancé had to wash his back.  R. 34.  His fiancé did the cooking, cleaning, and shopping for the household.   R. 35.

Gladden then testified.  She opined that a person of Hickman's age, education and experience, who was limited to medium work, could perform Hickman's past relevant work.

On August 27, 2007, the ALJ issued his decision. R. 11-17.  The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the

claimant to have a severe impairment. 20 C.F.R. §§ 404.1520©, 416.920©.

 If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Such severe impairments are set forth in the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

    If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show  that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  Knight v. Chater,

55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Hickman met his burden of proof at Steps 1 and 2 of the Analysis.  He had not engaged in substantial gainful activity since February 28, 2005, and suffered from severe impairments, consisting of neck and back strain or sprain and degenerative changes in the cervical spine.  R. 13-14.   At Step 3, the ALJ found that Hickman's impairments did not meet any Listing.  R. 14.   At Step 4, the ALJ found that Hickman had the RFC to perform the full range of medium work.  The ALJ relied on the evaluations by Drs. Chapa, Smalley, and Bilinsky, and the 2007 assessment.  The ALJ found that Hickman's testimony regarding his limitations was not fully credible.  He further discounted Dr. Stegeman's 2005 work restrictions because Dr. Stegeman relied on Hickman's subjective complaints rather than objective medical test results.  R. 15-17.  The ALJ then relied on Gladden's testimony to determine that Hickman could perform his prior work.  R. 17.   The ALJ, thus, determined that Hickman was not disabled.  Id.   The Appeals Council denied Hickman's request for review on December 21, 2007.  R. 2.   Hickman then filed this action for judicial review.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must  accept the ALJ's findings if they are supported by substantial evidence,  and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).    The   ALJ   further must articulate at least minimally his analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).   The  Court  must  be  able  to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The January 2007 physical assessment and the opinions of Drs. Chapa, Smalley, and Bilinsky all support the conclusion that Hickman could perform medium work.  Gladden's opinion supports the conclusion that Hickman  could perform  his  prior relevant work. The ALJ's determination of  Hickman's credibility was based on evidence in the record  and this Court will not disturb his assessment.  Dr. Stegeman's 2005 work restrictions were based on Hickman's subjective complaints rather than objective test results, and

10

were not consistent with the other medical evidence in the record.  The ALJ, thus, was not required to give Dr. Stegeman's opinions controlling weight.  20 C.F.R. §404.1527(d).

Hickman mentioned in his Motion for Summary Judgment a "slight heart attack" and tests for HIV, glaucoma, and bronchitis.  Motion for Summary Judgment (d/e 11), at 2.  Hickman also mentioned that he was, "at 60% percent VA qualified service-connected disabilities." Id. Hickman also stated that he was having surgery on his feet and that his left hip was one inch shorter than his right. Id., at 3.  Hickman attached a copy of his application for disability benefits that he submitted to the Department of Veterans Affairs (VA). Id., at 4-14. Hickman provides no evidence to support or explain the assertions in his Motion.  The VA application, at best, contains Hickman's reiteration of his claims.  None of Hickman's submission provides any basis for overturning the ALJ's decision.

THEREFORE, the Defendant Commissioner's Motion for Summary Affirmance (d/e 14) is ALLOWED, and Plaintiff's Motion for Summary Judgment and Memorandum (d/e 11) is DENIED.  Summary judgment is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Gregory Hickman.  The decision of the Commissioner is

11

AFFIRMED.   All pending motions are denied as moot.  This case is

closed.

IT IS THEREFORE SO ORDERED.

ENTER:  January 23, 2009.

    FOR THE COURT:

                                           s/Charles H. Evans
                                           CHARLES H. EVANS
                                    United States Magistrate Judge